84 N.J. Super. 257 (1964)
201 A.2d 736
JOHN J. TUBRIDY, PLAINTIFF-APPELLANT,
v.
CONSOLIDATED POLICE AND FIREMEN'S PENSION FUND COMMISSION OF THE STATE OF NEW JERSEY, DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued June 8, 1964.
Decided June 22, 1964.
*258 Before Judges CONFORD, FREUND and SULLIVAN.
Mr. Benjamin H. Chodash argued the cause for appellant (Messrs. Krieger & Chodash, attorneys).
Mr. Richard Newman, Deputy Attorney General, argued the cause for respondent (Mr. Arthur J. Sills, Attorney General of New Jersey, attorney; Mr. Vincent E. Hull, Jr., Law Assistant, of counsel).
The opinion of the court was delivered by CONFORD, S.J.A.D.
The issue here is whether a retirement pension granted plaintiff by the Consolidated Police and Firemen's Pension Fund Commission of the State of New Jersey ("Pension Fund," hereinafter) was properly based *259 upon plaintiff's $4,700 salary received prior to February 16, 1952 as a captain in the Jersey City paid fire department, or whether it should have been based on his $6,500 salary in the position of fire commissioner to which he was appointed February 16, 1952 and which he held until May 18, 1957, having applied for retirement on May 15, 1957 effective May 18, 1957. The Pension Fund ruled that the lower figure was controlling.
Plaintiff had served in the Jersey City Fire Department since May 18, 1920, rising to the rank of captain in 1933. On February 5, 1952 the City of Jersey City by ordinance created a "Board of Public Safety" within the Department of Public Safety (the city then functioning under the commission form of government). It was to consist of three members, to be designated respectively as police commissioner, fire commissioner and license commissioner, appointed by the Director of the Department of Public Safety to serve for a term co-extensive with that of the Director but subject to discretionary removal by him at any time. The ordinance provided that each member of the Board should perform such duties as might be assigned him by the Director "and shall assist the said Director in the administration of the affairs of the particular division to which he may be assigned." The salaries of the members of the Board of Public Safety were fixed by the ordinance, that of fire commissioner being set at $6,500.
Plaintiff was granted a leave of absence "from his status as captain" February 16, 1952 and on the same day was appointed fire commissioner. Thenceforth he received the salary appertaining to that office but continued to be listed on the fire department payroll. His leave of absence remained in effect until his application for retirement in 1957. By direction of a municipal pension agency to which the defendant Pension Fund subsequently succeeded, the pension deductions from plaintiff's salary were calculated upon his compensation as fire commissioner rather than as captain. This practice was continued under the administration of the fund by the defendant *260 Pension Fund, but it appears from the expanded record herein that the Pension Fund officials did not know prior to the application for retirement that plaintiff had become fire commissioner.[1] Moreover, that body tendered a return to plaintiff of the excess contributions made by him over the amount deductible on the basis of the salary of captain when it rejected his claim for pension on the higher basis. Plaintiff declined the tender.
Defendant has made no contention that plaintiff is not entitled to a pension under the statute, and we imply no view on the matter, confining our consideration strictly to the issue as to whether any pension payable must be calculated on the basis of the salary of fire commissioner rather than that of captain.
The statutory provisions involved in the controversy are N.J.S.A. 43:16-1, 43:16-17. Section 43:16-1, to the extent relevant, reads:
"In all municipalities any active member of a police department or of a paid or part paid fire department * * * who shall have served honorably in the police or fire department for a period of twenty-five years and reached the age of fifty-one years, or any employee member of any such department who shall have served honorably in such department for a period of twenty-five years and who has reached the age of sixty years shall, on his own application, be retired on a service retirement pension equal to one-half of his average salary. * * *"
Section 43:16-17 contains, among others, the following definitions:
"(1) `Member' shall mean a person who on the effective date of the act of which this act is amendatory, that is on July first, one thousand nine hundred and forty-four, was a member of a municipal police department or paid or part paid fire department or county *261 police department or a paid or part paid fire department of a fire district located in a township and who has contributed to the pension fund established under chapter sixteen of Title 43 of the Revised Statutes and shall hereafter contribute to said fund.
(2) `Active member' shall mean any `member' who is a policeman, fireman, detective, lineman, driver of police van, fire alarm operator or inspector of combustibles and who is subject to call for active service or duty as such.
(3) `Employee member' shall mean any `member' who is not subject to call for active service or duty as a policeman, fireman, detective, lineman, driver of police van, fire alarm operator or inspector of combustibles.

* * * * * * * *
(7) `Service' shall mean service rendered while a member is employed by a municipal police department, paid or part paid fire department, county police department or paid or part paid fire department of a fire district located in a township prior to the effective date of this act for such service to such departments thereafter.

* * * * * * * *
(9) `Average salary' shall mean the average annual salary paid during the last three years of a member's service, or in the event he has been employed for less than three years, the average pay he received during the time he was employed. * * *"
Plaintiff argues, in essence, that his service as fire commissioner was service as an "active member" of the fire department and that his salary as such constituted salary as such member during the last three years of his term in that position, within the meaning and intent of the act, so that he is entitled to a pension based on that amount of compensation. In holding to the contrary after a hearing of the claim the Pension Board rendered the following conclusion:

"CONCLUSION
The services which Mr. Tubridy performed for the City of Jersey City from the time he was granted a leave of absence until the time he retired were not those of a member of the Fire Department. While Mr. Tubridy did engage in fire fighting activities and was included on the payroll records of the Bureau of Fire, he was actually a member of the Bureau of Public Safety. This determination is based on the facts that Mr. Tubridy was on leave of absence; his appointment was political and not of a permanent nature as is required for members of a Fire Department; his term of office was coextensive with that of the Director of Public Safety; he was subject to removal by the Director whenever the Director saw fit; he was to perform *262 duties as assigned by the Director and was to assist the Director in the administration of the affairs of the particular division assigned to him.
The Commission rules that Mr. Tubridy's pension benefits are not to be based on salaries he received as Fire Commissioner."
Plaintiff relies on his testimony to the effect that upon his appointment as fire commissioner the then Director of Public Safety instructed him as follows:
"He informed me my duties were to respond on the first alarm to hospitals, schools, large factories, waterfront fires, and ships. I was to respond on all second alarms on a twenty-four hour basis duty at all times; that I would not leave the Fire Department on vacation at the same time that the Chief would be; that I would stagger my vacation; that I would either take my vacation before the Chief or after the Chief, but that at no time would both of us be on vacation at one time. I had a car assigned to me."
The remainder of plaintiff's testimony may be summarized. He was on call night and day to respond to certain types of major fire, and did so regularly. At such fires he "cooperated" with the fire chief or deputy fire chief in attendance, but gave no orders at any fire. He did make suggestions or "requests" concerning handling of specific situations at fires. During his tenure there was an understanding in the department that any fire commissioner who was on leave from the department while in that office was limited in authority at a fire "not brought under control," in respect of "extinguishing, confining or controlling" such fire, to his rank as a member of the department, and that a fire commissioner who was a "civilian" or a retired or former member of the department had no authority in respect of such fire. For some unexplained reason, this understanding was reduced to a formal written "General Order" on April 22, 1957, shortly before plaintiff's pension application, by authority of the then fire chief.
Plaintiff as fire commissioner was generally responsible to the Director of Public Safety for administrative direction of the fire department, specifically as to such matters as increase of manpower, adding or improving equipment, promotions, *263 attendance at disciplinary hearings, steps for maintaining the fire insurance rating of the municipality, inspection of factories, and the like.
We are satisfied, as was the Pension Board, that the position of fire commissioner on the Board of Public Safety was essentially an administrative office in the Department of Public Safety, not that of an "active member" of the fire department within the intent of the pension statute. It is clear that the fire commissioner's attendance at fires was of an administrative-supervisory character rather than that of active participation in fire-fighting. If plaintiff actually participated to any degree in active fire-fighting as such, which seems doubtful on the proofs, it was of a volunteer and spasmodic character, not contemplated by the ordinance which created the office he occupied as a regular duty attendant thereupon. We are in agreement with the Pension Board that the pension statute does not contemplate that salary paid for services in any such office constitutes salary paid as compensation of an active member of the fire department so as to justify a pension calculated on the basis thereof.
Plaintiff has cited certain judicial decisions in pension matters to support his position, but we find them not authoritative or helpful in relation to the precise issue here presented and therefore do not discuss them.
Plaintiff argues, in the alternative, that the Pension Board is estopped to deny him a pension fixed on the basis of his salary as fire commissioner because it accepted deductions from his salary as such for pension purposes. We do not agree.
The pension statute is carefully drawn to protect the integrity of the public and contributed funds from which pensions are paid. Administrative errors by officials in respect of such funds, which are a public trust, cannot on the theory of estoppel be permitted to aggrandize the specific statutory rights of qualified pensioners into illegal depletions of such funds for their private benefit. See Summer Cottagers' Ass'n of Cape May v. City of Cape May, 19 N.J. 493, 504-505 *264 (1955). Excess pension deductions from plaintiff's salary have been tendered back to him.
We are not impressed with the argument as to the inequity of plaintiff's pension status in his having assertedly relied upon the expectation of the larger pension in taking and retaining the position of fire commissioner and in thereby having given up the prospect of increases in his salary as captain which would have led to a higher pension than that to which the decision below remits him. Aside from other responses to this contention, it is not shown that plaintiff took the office of fire commissioner in material reliance upon an assurance from anyone in authority that he would be entitled to a pension geared to the salary of fire commissioner.
The applicability of the doctrine of estoppel against public agencies and officials is quite limited, to guard against use thereof to injure the public interest. Although there is growing liberality in entertaining the rule in certain areas, see Gruber v. Mayor and Tp. Com. of Raritan Tp., 39 N.J. 1, 18 (1962), each case stands on its own facts. "The precise nature and extent" of the plaintiff's "good faith reliance" on the official action or inaction relied on must be weighed against the public interests involved. Id., at p. 19. So judged here, the plaintiff's asserted equities lack such weight as to justify what we find would be a plain violation of a statute designed to protect the interests of all pensioners within its purview, present and prospective.
Judgment affirmed.
NOTES
[1] Although plaintiff moved to expunge a supplemental appendix filed by defendant containing information not in the hearing record, he agreed at the argument that the court might have recourse to the facts set forth therein rather than have the matter remanded to the board for taking of the proofs of those facts, which are uncontroverted.