IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

DEWEY RAY LAVENDER, and : 
STEVEN WARREN, :     C.A. No: K13C-08-024 RBY
 :     In and For Kent County
     Plaintiffs, :
 :
     v. :
 :
SCOTT KOENIG, individually and in his :
official capacity as City Manager, KIM :
HAWKINS, individually and in her official :
capacity as Director of Human Resources, :
the CITY OF DOVER COUNCIL, and :
CITY OF DOVER, :
 :
     Defendants. :

*Submitted: November 18, 2016*
*Decided: February 1, 2017*

*Upon Consideration of Defendant City of Dover's*
*Motion for Summary Judgment*
GRANTED

**ORDER**

Michele D. Allen, Esquire, Law Offices of Michele D. Allen, LLC, Hockessin, Delaware for Plaintiffs.

Daniel A. Griffith, Esquire, Whiteford Taylor Preston, LLC, Wilmington, Delaware for Defendant City of Dover.

Young, J.

<u>**SUMMARY**</u>

Dewey Ray Lavender and Steven Warren ("Plaintiffs") filed a Complaint against Scott Koenig, individually and in his capacity as City Manager; Kim Hawkins, individually and in her official capacity as Director of Human Resources; the City of Dover Council, and the City of Dover ("Defendants"). Plaintiffs asserted claims stemming from the manner in which they were allegedly induced to continue working at the McKee Run Generating Station ("Power Plant") and Defendants' denial of their application for pension benefits under the City of Dover's Code of Ordinances. The statute of limitations bars Plaintiffs' claims for breach of the implied covenant of good faith and fair dealing. Further, Plaintiffs' claims for breach of contract fail because Plaintiffs' are not eligible employees under the City of Dover's Code of Ordinances.

<u>**FACTS AND PROCEDURE**</u>

Steven Warren started working at the Power Plant in August 1980. He retired from the Power Plant in 2015. Dewey Ray Lavender started working at the Power Plant in March 1981. He still works at the Power Plant. The parties do not dispute that from 1981 until 1996 the City of Dover ran this Power Plant.

In 1996, the City of Dover adjusted the way the Power Plant functioned. It did this through an agreement with D/FD Operating Services LLC through its agent Louis Dreyfus Electric Power Inc. Defendants maintain that the City of Dover privatized the Power Plant by transferring control of the Power Plant to D/FD Operating Services LLC. Plaintiffs assert that the City of Dover controlled the Power Plant. The parties agree that the City of Dover reimbursed D/FD Operating Services LLC for the

Plaintiffs' wages and benefits under this agreement.

The parties agree that in February 1996 Plaintiffs signed identical letters allowing them to continue working at the Power Plant.[1] The letters stated "as an employee of the Company, you will no longer be eligible to continue receiving city benefits." Further, the letters asked Plaintiffs to (1) decide whether to decline employment at the Power Plant; (2) accept employment at the Power Plant, while withdrawing fifty percent of the cash value of their unused sick leave, as a bonus, and remaining vested in the City of Dover's pension plan; or (3) accept employment at the Power Plant, while withdrawing 100 percent of the cash value of their unused sick leave, as a bonus, and not remaining vested in the City of Dover's pension plan. Plaintiffs chose the second option to accept employment and remain vested in the City of Dover's pension plan.

In 2006, Dover adjusted the way the Power Plant functioned again. The City of Dover entered an agreement with North American Energy Services Company ("NAES"). Defendants assert this agreement placed NAES in control of the Power Plant. Plaintiffs claim the City of Dover was still in control of the Power Plant. Plaintiffs continued working at the Power Plant. Under this agreement, the parties agree, the City of Dover reimbursed NAES for Plaintiffs wages and benefits.

Steven Warren testified that in 2008, he found out about an agreement that allowed Dover paramedics to remain in Dover's pension plan – even after they started

---

[1] Plaintiffs dispute whether said letters were employment offers.

working with Kent County.[2] He asserted that he discovered this information on the City of Dover's website. Plaintiffs assert that certain employees were allowed to maintain their City of Dover pension in a manner similar to the paramedics.

In January 2012, Plaintiffs started the process of applying for unreduced pension benefits with the City of Dover. On February 14, 2012, Scott Koenig, Dover's then City Manager, notified Plaintiffs' attorney that he did not agree that they were entitled to unreduced pension benefits. On July 11, 2012, Plaintiffs sent Kim Hawkins, Dover's then Director of Human Resources, a letter reiterating their belief that they were entitled to unreduced pension benefits. On August 20, 2012, Plaintiffs' application for unreduced pension benefits was formally denied.[3]

In her deposition testimony, the Controller Treasurer of the City of Dover, Donna S. Mitchell, noted that Plaintiffs have not paid any contribution for a City of Dover pension since, at the latest, October 2000.[4] Further, she asserted that bringing in past employees, similarly situated to Plaintiffs, would create an unfunded liability for the City of Dover. Plaintiffs produced no evidence challenging these assertions.

On August 21, 2013, Plaintiffs filed the Complaint for this suit. Defendants

---

[2] Defendants asserted in their motion that Dewey Ray Lavender testified similarly in his deposition. However, Defendants did not provide the page of the deposition containing such testimony.

[3] Defendants avow that Plaintiffs were aware that the City of Dover would deny their application for unreduced pension benefits in 1996.

[4] Mitchell was unsure of whether Plaintiffs contributed to the city pension plan prior to the date on which she was hired (October 2000). Defendants assert that Plaintiffs have not contributed to the Dover pension plan since 1996. However, they did not produce evidence supporting this assertion.

removed this suit to federal court on December 19, 2013. After the United States District Court for the District of Delaware dismissed all of the federal claims asserted in the initial suit, it remanded the remaining claims to this Court. The City of Dover then filed the instant Motion for Summary Judgment.

### STANDARD OF REVIEW

Summary judgment is appropriate where the record exhibits no genuine issue of material fact, and the movant is entitled to judgment as a matter of law.[5] This Court shall consider the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any" in deciding the motion.[6] The moving party bears the initial burden of demonstrating the nonexistence of material issues of fact; the burden then shifts to the nonmoving party to show that there are material issues of fact in dispute.[7] The Court views the record in the light most favorable to the nonmoving party.[8] When material facts are in dispute, or "it seems desirable to inquire more thoroughly into the facts, to clarify the application of the law to the circumstances," summary judgment will not be appropriate.[9] However, when the facts permit a reasonable person to draw but one inference, the question becomes one for

---

[5] *United Vanguard Fund, Inc. v. Takecare, Inc.*, 693 A.2d 1076, 1079 (Del. May 22, 1997).

[6] Del. Super. Ct. Civ. R. 56(c).

[7] *Fauconier v. USAA Cas. Ins. Co.*, 2010 WL 847289, at *2 (Del. Super. Mar. 1, 2010).

[8] *Moore v. Sizemore*, 405 A.2d 679, 680 (Del. Aug. 6, 1979).

[9] *Sztybel v. Walgreen*, 2011 WL 2623930, at *2 (Del. Super. June 29, 2011).

decision as a matter of law.[10]

## **DISCUSSION**

Defendant City of Dover argues that the statute of limitations bars Plaintiffs' claims for breach of the implied covenant of good faith and fair dealing and breach of contract[11] because these claims accrued more than three years before Plaintiffs filed suit. Alternatively, Defendant City of Dover argues that Plaintiffs have not provided evidence sufficient to support their breach of the implied covenant of good faith and fair dealing claims. Finally, Defendant City of Dover asserts that Plaintiffs' breach of contract claims should fail because Plaintiffs were not eligible employees under the City of Dover's pension scheme.

The parties do not dispute the material facts in this action. Thus, summary judgment is appropriate. Plaintiffs asserted their claims for breach of the implied covenant of good faith and fair dealing more than three years after their claims accrued. The discovery rule did not toll the statute of limitations for these claims. Further, Plaintiffs are not eligible employees under the City of Dover's pension scheme.

## I. The Statute of Limitations Bars Plaintiffs' Claims for Breach of the Implied Covenant of Good Faith and Fair Dealing; It Does Not Bar Plaintiffs' Breach of Contract Claims

The statute of limitations for breaches of contract expires three years after the

---

[10] *Wootten v. Kiger*, 226 A.2d 238, 239 (Del. 1967).

[11] Pension laws are a form of contract between the state and its employees. *Thompson v. State Bd. of Pension Trs.*, 552 A.2d 850, 852 (Del. Super. Sept. 28, 1988).

date on which a cause of action accrues.[12] To determine whether the claims in the instant suit are barred by the statute of limitations this Court must answer two questions. First, when did the claims accrue? Second, if the claims accrued more than three years before Plaintiffs filed their suit, was the statute of limitations tolled at any point?

Plaintiffs' breach of the implied covenant of good faith and fair dealing claims accrued more than three years before Plaintiffs filed their suit.

Plaintiffs' breach of contract claims accrued less than three years before Plaintiffs filed their suit.

The circumstances surrounding Plaintiffs' claims for breach of the implied covenant of good faith and fair dealing did not toll the statute of limitations. Thus, the statute of limitations bars Plaintiffs' claims for breach of the implied covenant of good faith and fair dealing. The statute of limitations does not bar Plaintiffs' claims for breach of contract.

### A. When Did the Claims Accrue?

In contract actions, the statute of limitations accrues "at the time the contract is broken, not at the time when actual damage results or is ascertained."[13] In *U.S. Cellular Investment Company of Allentown v. Bell Atlantic Mobile Systems, Inc.*, the appellant sued Bell Atlantic for violating an agreement not to compete with a

---

[12] 10 *Del. C.* § 8106; *Connelly v. State Farm Mut. Auto. Ins. Co.,* 135 A.3d 1271, 1275 (Del. Mar. 4, 2016).

[13] *Worrel v. Farmers Bank of the State of Delaware*, 430 A.2d 469, 472 (Del. May 5, 1981).

partnership in a specific geographical area.[14] The Delaware Supreme Court held that the statute of limitations in this suit accrued when Bell Atlantic filed an application with the FCC to provide cellular service in areas adjoining the specific geographic area because this was the date on which the contract was breached.[15]

Plaintiffs' claims for breach of the implied covenant of good faith and fair dealing accrued in February 1996, when Plaintiffs accepted employment with D/FD Operating Services LLC, because that was the point at which Defendants allegedly breached the implied covenant of good faith and fair dealing. In the employment context, a cause of action arises for breach of the implied covenant of good faith and fair dealing when an employer "induces another to enter into an employment contract through actions, words, or withholding information, which is intentionally deceptive in some material way to the contract."[16] Plaintiffs entered the relevant employment contract in February 1996, when they signed their offer letters. They could not have been induced into entering their employment contract at any point after February 1996. Thus, the action could not have accrued at any point after February 1996.

Plaintiffs' claims for breach of contract accrued in August 2012 when Defendants denied their application for benefits because that was the point at which Defendants allegedly breached their alleged obligation to pay Plaintiffs' benefits. With respect to their breach of contract claims, Plaintiffs maintain that they are

---

[14] *United States Cellular Inv. Co. of Allentown v. Bell Atlantic Mobile Sys. Inc.*, 677 A.2d 497, 499 (Del. May 29, 1996).

[15] *Id.* at 503.

[16] *E.I. DuPont de Nemours and Co. v. Pressman*, 679 A.2d 436, 440 (Del. May 2, 1996).

entitled to benefits under § 2-327 of the City of Dover Code of Ordinances. Plaintiffs' application for benefits, under this provision of the City of Dover Code of Ordinances, was not denied until August 20, 2012. As such, the breach of contract claims accrued on August 20, 2012.

**B.  Was the Statute of Limitations Tolled for Plaintiffs' Breach of Implied Covenant of Good Faith and Fair Dealing Claims?**

Plaintiffs argue that any of their claims filed more than three years after the date on which the statute of limitations accrued are still within the statute of limitations. They assert that they did not know of any facts that would either constitute a cause of action or put them on inquiry of the possibility that facts existed that would constitute a cause of action until 2012. This "discovery rule," the application of which Plaintiffs' claim, applies in three situations. The first situation is one in which the defendant has fraudulently concealed key facts.[17] The second is where the injury was inherently unknowable.[18] The third situation is one in which a plaintiff reasonably relies on the competence and good faith of a fiduciary who is alleged to have engaged in wrongful self-dealing.[19] Plaintiffs' claims for breach of the implied covenant of good faith and fair dealing do not fall under any of these situations. Therefore, Plaintiffs' claims for breach of the implied covenant of good faith and fair dealing are barred by the statute of limitations.

---

[17] *AM General Holdings LLC v. The Renco Group, Inc.*, 2016 WL 4440476, at *13 (Del. Ch. Aug. 22, 2016).

[18] *Id.*

[19] *Id.*

### 1. Defendants Did Not Fraudulently Conceal Key Facts Regarding Plaintiffs' Implied Covenant of Good Faith and Fair Dealing Claims

Two elements must be present for this Court to find that Defendants fraudulently concealed facts in a manner sufficient to toll the statute of limitations. Defendants must have acted in an affirmative manner to conceal the cause of action from Plaintiffs.[20] Defendants also must have known about the alleged wrong.[21] In the instant matter, Defendants never affirmatively concealed the cause of action from Plaintiffs.

Inaction does not constitute concealing a fact in an affirmative manner. In *Nardo v. Guido DeAscanis & Sons, Inc.*, the plaintiffs contracted with the defendant to build a building.[22] The defendant improperly constructed the building's roof rafters.[23] Defendant did not notify the plaintiff of the roof issues, nor did the defendant take any sort of action to hide the roof issues from the plaintiff.[24] The Delaware Superior Court held that the defendant did not fraudulently conceal the facts from the plaintiff because there was no affirmative act of concealment or representation made to exclude suspicion.[25]

---

[20] *Wright v. Dumizo*, 2002 WL 31357891, at *3 (Del. Super. Oct. 17, 2002).

[21] *Id.*

[22] *Nardo v. Guido DeAscanis & Sons, Inc.*, 254 A.2d 254, 255 (Del. Super. May 26, 1969).

[23] *Id.*

[24] *Id.* at 256.

[25] *Id.*

Similar to the defendant in *Nardo*, Defendants never concealed a fact in an affirmative manner in this case. While it is true that Plaintiffs' employment acceptance letters did state "as a regular employee of the Company, you will no longer be eligible to continue receiving City benefits," this assertion falls far short of hiding other employees' entitlement to benefits. Even if it did not, this statement was made by D/FD Operating Services LLC, a non-party to this suit. Additionally, Plaintiffs failed to provide any evidence that Defendants affirmatively concealed the City of Dover's payment arrangements with D/FD Operating Services LLC and NAES. Thus, Defendants did not fraudulently conceal key facts regarding Plaintiffs' implied covenant of good faith and fair dealing claims.

### 2. Plaintiffs' Injuries Were Not Inherently Unknowable Under the Discovery Rule

Under the discovery rule, alleged injuries are inherently unknowable when a plaintiff does not detect an alleged injury because of his "justifiable reliance on a professional or expert whom [he had] no ostensible reason to suspect of deception."[26]

It is central to this application of the discovery rule that the relationship, between the plaintiff and defendant, be characterized by a lack of ability to detect deception. In *AM General Holdings LLC v. The Renco Group, Inc.*, a plaintiff and defendant entered into a joint-venture agreement.[27] The joint-venture agreement contained provisions that would make it possible for the defendant to catch the

---

[26] *AM General Holdings LLC*, 2016 WL 4440476 at *14.

[27] *Id.* at *2.

plaintiff in the event that the plaintiff breached the agreement.[28] The Court of Chancery held that the plaintiff's alleged injuries were not inherently unknowable, because the plaintiff had mechanisms at its disposal through which it could discover a breach of the joint-venture agreement.[29]

Courts require that a situation, in which a fact is inherently unknowable, involve a relationship between layperson and an expert or professional.[30] In *Rudginski v. Pullella*, the plaintiffs asserted that a plumbing company negligently installed their septic system.[31] The Superior Court held that the discovery rule applied to that case because the situation was similar to previously decided cases, stating that facts were inherently unknowable, involving the hidden errors of accountants, lawyers, and doctors.[32]

The instant case is not one in which Plaintiffs lacked the ability to detect deception. It is true that Plaintiffs did not have the resources that the plaintiff in *AM General Holdings LLC* had. However, Steven Warren admitted in his deposition to knowing that some paramedics were allowed to maintain their status as city

---

[28] *Id.*

[29] *Id.* at *14.

[30] *See also Krahmer v. Christie's Inc.*, 903 A.2d 773, 783 (Del. Ch. June 2, 2006) (holding facts were not inherently unknowable in a situation where a person purchased an allegedly fake piece of art because the defendant was not the plaintiff's agent and plaintiff could have hired an appraiser prior to purchasing the artwork).

[31] *Rudginski v. Pullella*, 378 A.2d 646, 646-47 (Del. Super. Sept. 6, 1977).

[32] *Id.* at 649.

employees while working for Kent County as early as 2008. Further, this case is not a situation in which an alleged breach is only within the knowledge of the Defendants. Steven Warren said he made his discovery on the City of Dover's website. Moreover, the work arrangements were within the knowledge of Plaintiffs fellow employees at the Power Plant and the paramedics.

Further, the relationship between the Plaintiffs and Defendants is not similar to the relationship between a layperson and an expert or professional. While in *Pullella*, the plaintiffs paid the plumber to provide a service, within the plumber's expertise, Plaintiffs in this case accepted an employment agreement from an employer. There was less reason for Plaintiffs in the instant case blindly to trust Defendants than there was in earlier determinations that facts were inherently unknowable. Therefore, Plaintiffs' alleged injuries were not inherently unknowable.

### 3. Plaintiffs Did Not Reasonably Rely on the Competence and Good Faith of a Fiduciary

The instant action is not one which involves fiduciaries. Thus, Plaintiffs did not reasonably rely on the competence and good faith of a fiduciary in this cause of action.

The discovery rule does not apply in the instant action, because Defendants did not fraudulently conceal key facts, Plaintiffs' injuries were not inherently unknowable, and Plaintiffs did not reasonably rely on the competence and good faith of a fiduciary. Since Plaintiffs did not file their cause of action until August 21, 2013, their breach of the implied covenant of good faith and fair dealing claims accrued in 1996, and the statute of limitations was never tolled on these claims, the statute of

limitations bars Plaintiffs' implied covenant of good faith and fair dealing claims.

## II. Plaintiffs Are Not Eligible Employees Under the City of Dover's Pension Scheme

Plaintiffs assert that Defendants breached their pension agreement when they denied Plaintiffs application for benefits in August 2012. Defendants must have owed Plaintiffs a contractual obligation in order for Plaintiffs to assert successfully a breach of contract claim.[33] Plaintiffs argue that there was either an express or implied contract in place through which they were entitled to unreduced pension benefits. Since the Plaintiffs do not qualify under the pension plan definition of eligible employees, there is no express contractual obligation. There is no implied contractual obligation to provide Plaintiffs with unreduced pension benefits, because Dover's pension scheme already expressly addresses the definition of eligible employees.

### A. Defendants Do Not Have an Express Contractual Obligation to Provide Plaintiffs With an Unreduced Pension

As noted above, the City of Dover pension scheme provides unreduced pension benefits, at any time before the normal retirement date, "for eligible employees hired before May 1, 1994, who have completed twenty-five years of continuous service, or who have attained the age of fifty years and have completed twenty years of continuous service."[34] Under this scheme, an eligible employee is "any person regularly employed in rendering service to the city on a full-time, permanent basis, who is not participating in any other retirement plan, to which the city contributes for

---

[33] *H-M Wexford LLC v. Encorp, Inc.*, 832 A.2d 129, 140 (Del. Ch. May 27, 2003).

[34] Dover, Del., Ordinance § 2-327.

14

them, and whose compensation is paid directly by the city."[35]

Even though D/FD Operating Services LLC and NAES have paid Plaintiffs since 1996, Plaintiffs contend that Dover has directly paid them since 1996 because Dover reimbursed D/FD Operating Services LLC and NAES for Plaintiffs' salaries. Defendant disagrees, noting that such an interpretation of the term "paid directly" is contravened by the fact that neither Dover on Plaintiffs' behalf nor Plaintiffs have contributed to the pension fund in twenty years.

Interpretations of public pension statutes must be in harmony with their purpose: "to encourage individuals to enter and remain in public service by arranging for a pension which, by fulfillment of specified eligibility requirements, may become the property of the individual as a matter of right upon termination of public service."[36] Thus, an interpretation of a public pension statute that requires a city to provide benefits to persons who do not contribute to the city's pension fund is invalid.[37] In *Twilley v. Board of Pension Trustees*, a man held a state position for four years that did not have any requirements with respect to the hours the man was expected to work.[38] Delaware's State Employees' Pension Plan had a minimum hours requirement for any person to be considered a full time employee.[39] The man worked

---

[35] Dover, Del., Ordinance § 2-321.

[36] *Twilley v. Bd. of Pension Trs.*, 1996 WL 191473, at *3 (Del. Super. Feb. 21, 1996).

[37] *Id.* at *4.

[38] *Id.* at *1.

[39] *Id.* at *2.

the amount of hours necessary for Delaware to recognize him as a full time employee, for pension purposes, under Delaware's State Employees' Pension Plan, for those years.[40] However, the man did not contribute towards a future pension during his contested years of employment.[41] Thus, the Delaware Superior Court was tasked with deciding whether, under Delaware's State Employees' Pension Plan, it should count hours worked *ex-ante* or *ex-post*.[42] The Delaware Superior Court held that it should count hours worked *ex-ante,* for the purposes of *Twilley*, because the man never contributed to the state pension plan.[43]

While *Twilley* dealt with a different statutory definition of employee, its reasoning still stands. If this Court were to define "paid directly" as Plaintiffs desire, its definition would run counter to the statute's purpose, because Plaintiffs have not contributed to the city's pension plan since 2000. Allowing Plaintiffs, and those similarly situated to Plaintiffs, to draw an unreduced pension would create an unfunded liability for the City of Dover. Thus, this Court must hold that the Plaintiffs' are not eligible for the benefits they claim.

**B. There Is No Implied Contractual Obligation to Provide Plaintiffs With Unreduced Pension Benefits**

Plaintiffs also argue that they were eligible employees under an implied

---

[40] *Id.*

[41] *Id.*

[42] *Id.* at *3-4

[43] *Id.*

16

contractual obligation. "A contractual obligation cannot be implied where an express obligation exists."[44] Dover's pension scheme already expressly addresses the definition of the term "eligible employee." As such, there is no implied contractual obligation that alters the city's existing definition.

## CONCLUSION

The statute of limitations bars Plaintiffs' claims for breach of the implied covenant of good faith and fair dealing. Further, Plaintiffs are not eligible employees under the City of Dover's pension scheme. Therefore, City of Dover's Motion for Summary Judgment is **GRANTED**.

**IT IS SO ORDERED**.

/s/ Robert B. Young
J.

RBY/lmc
*Via File & ServeXpress*
cc:     Counsel of Record
        Opinion Distribution

---

[44] *Good v. Moyer*, 2012 WL 4857367, *5 (Del Super. Oct. 10, 2012).