# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| VAN J. BANNER | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. N21C-06-235 JRJ |
| | ) | |
| | ) | |
| HOCKESSIN CHASE, L.P.; TOLL | ) | |
| BROTHERS, INC.; WENDY JO | ) | |
| STURTZ; and WILLIAM I. WOLFF | ) | |
| | ) | |
| Defendants. | ) | |

Date Submitted:  February 11, 2022
Date Decided:  May 12, 2022

## <u>MEMORANDUM OPINION</u>

*Upon Defendants Hockessin Chase, L.P. and Toll Brothers, Inc., and Wendy Jo Sturtz and William I. Wolff's Motions to Dismiss*:
**GRANTED**.

Douglas J. Cummings, Jr., Esquire, of Kollias Law, LLC, 3513 Concord Pike, Suite 3300, Wilmington, Delaware 19803, Attorney for Plaintiff Van J. Banner.

Anthony N. Delcollo, Esquire, of Offit Kurman, P.A., 222 Delaware Avenue, Suite 1105, Wilmington, Delaware 19801, Attorney for Defendants Hockessin Chase, L.P. and Toll Brothers, Inc.

Donald L. Gouge, Jr., Esquire, of Donald L. Gouge, Jr., LLC, 800 North King Street, Suite 303, Wilmington, Delaware 19801, Attorney for Defendants Wendy Jo Sturtz and William I. Wolff.

**Jurden, P.J.**

# I. INTRODUCTION

Before the Court are Motions to Dismiss submitted by Defendants Hockessin Chase, L.P. and Toll Brothers, Inc. ("Developer Defendants"), Wendy Jo Sturtz ("Sturtz") and William I. Wolff ("Wolff") (collectively the "Defendants"). Defendants assert the Court should dismiss the Complaint because the statute of limitations expired before Plaintiff filed his Complaint. Plaintiff argues the Complaint was timely filed because the statute of limitations did not begin to run until June 27, 2018 – when Plaintiff received correspondence from Toll Brothers rejecting his warranty claim.

Applying Superior Court Civil Rule 12(b)(6), the Court finds that that the statute of limitations began to run by no later than April 6, 2016, and that Plaintiff was on inquiry notice of the claims on or before that date. Assuming *arguendo* that the Plaintiff was not on inquiry notice in April 2016, the Court finds he was on inquiry notice as of May 2, 2018, the date he submitted a warranty claim to Toll Brothers. The Court finds Plaintiff's Complaint filed on June 24, 2021 is time-barred, and therefore, Defendants' Motions to Dismiss are **GRANTED**.

## II. BACKGROUND

On March 17, 2006, Sturtz purchased a home at 43 Waterton Drive, Bear, Delaware (the "Property") from the Developer Defendants.[1] At that time, the Developer Defendants provided the homeowner a ten-year Builder's Limited Warranty for construction defects. After living in the home for almost a decade, Sturtz decided to put the property up for sale. In conjunction with the property listing, on February 22, 2016, Sturtz prepared a Seller's Disclosure of Real Property Condition Report ("Seller's Disclosure").[2] The Seller's Disclosure informed prospective buyers of the Sturtz's understanding of the then-present condition of the property.[3]

On or about February 24, 2016, Plaintiff and Sturtz executed an Agreement of Sale for Delaware Residential Property (the "Agreement of Sale").[4] In the Agreement of Sale, Plaintiff was obligated to complete, *inter alia*, a Residential Home Inspection, which allowed Plaintiff, at his own expense and using a home inspector of his choosing, to notify Sturtz of any identified defects. Sturtz could then either agree to remedy the defects, or refuse to do so.[5] Additionally, the Residential Home Inspection contingency contemplated a stucco inspection. Plaintiff hired an

---

[1] Compl. ¶ 11 (Trans. ID. 66715267).
[2] *Id*. Ex. 1 (Trans. ID. 66715267).
[3] *Id.*
[4] *Id*. Ex. 2 (Trans. ID. 66715267).
[5] Compl. ¶ 20.

inspector to perform the general home inspection, which was completed March 1, 2016.[6] Plaintiff also hired Expert Home Group to perform a stucco inspection, and on February 29, 2016, Expert Home Group completed the stucco inspection. Expert Home Group then issued a detailed inspection report.

The Expert Home Group Report (the "2016 Report") identified defects in the home's construction, including defects in the stucco facade.[7] The 2016 Report provided a summary checklist, specifically identifying inadequate or defective stucco and caulking.[8] The 2016 Report warned that the stucco thickness on the home was below construction industry standards in effect at the time the home was constructed, and noted "stucco that is thinner than specified may be subject to cracking, delamination, separation from the substrate, and may allow more water penetration through the stucco."[9] Additionally, the 2016 Report informed Plaintiff that caulking was inadequate and/or failing around the windows and doors, caulk was absent around fixtures mounted to the stucco, and joints between stucco and siding, stone, or trim elements were not caulked at all.[10] The absence of properly installed caulk created a risk of additional water damage.[11] The 2016 Report also noted cracks in the stucco, and recommended Plaintiff seal all cracks to prevent

---

[6] *Id.* ¶ 34.
[7] *Id.* Ex. 3, at 2. (Trans. ID. 66715267).
[8] *Id.*
[9] *Id.* ¶ 2.
[10] *Id.* ¶¶ 6-9.
[11] *Id.* ¶ 7.

4

water damage.[12] Finally, Expert Home Group explicitly warned Plaintiff that defective stucco issues may be latent and more extensive than those "present at the specific time of inspection."[13]

On March 3, 2016, Reaction Exteriors LLC ("Reaction Exteriors") produced an estimate to repair the issues identified in the 2016 Report. Reaction Exteriors priced the repairs at $6,234.00, including $1,924.00 for stucco repair and $3,445.00 to correct caulk related defects.[14]

On March 12, 2016, just prior to the expiration of the Builder's Limited Warranty, and during Plaintiff's pending purchase of the home, Sturtz submitted a warranty claim to the Developer Defendants.[15] The factual basis, i.e., the alleged damages which Sturtz sought remediation) for Sturtz's warranty claim was the 2016 Report and the Reaction Exteriors repair estimate. Toll Brothers accepted Sturtz's warranty claim.[16] In the April 6, 2016 Settlement and Release, Sturtz and Toll Brothers resolved the pending warranty claim, and Toll Brothers compensated Sturtz for the defects identified in the stucco inspection report commissioned by Plaintiff -

---

[12] *Id.* ¶ 10.

[13] *Id.* ¶¶ 36, 39.

[14] *Id.* Ex. 4 (Trans. ID. 66715267).

[15] *Id.* Ex. 9, at 1 (Settlement Agreement) (Trans. ID. 66715267). Sturtz and Toll Brothers executed a Settlement Agreement for water infiltration to the property. The Settlement Agreement indicates Sturtz purchased the property from Toll Brothers on March 17, 2006. On March 12, 2016, Sturtz submitted to Toll Brothers a Builder's Limited Warranty Request, seeking to repair "alleged deficiencies causing water infiltration in the Home." *Id.* The Builder's Limited Warranty expired on March 17, 2016, ten years from the date Sturtz bought the property.

[16] *Id.*

- the 2016 Report. Additionally, the Settlement Agreement required Sturtz to make certain disclosures to any future prospective buyer of the home. Specifically, Paragraph 5 of the Settlement Agreement provided:

> Owners agree to disclose the fact of the settlement and release of Toll entities, the expiration of the limited warranty, the Conditions, the Inspection Report, and the Warranty request to any future prospective buyer of the Home prior to the time when such buyer agrees to buy the Home directly from the owners or closes on the sale of the Home. Owners further agree to make all disclosures to any real estate brokers or agent(s) representing Owners or potential buyers in connection with Owner's marketing and/or sale of the Home as is required by applicable law.[17]

On April 6, 2016, Plaintiff purchased the home from Sturtz.[18] At closing, Sturtz issued a credit to Plaintiff in the amount of $6,234.00, payment for the cost of repairs provided in the Reaction Exteriors estimate.[19]

In the spring of 2018, Plaintiff learned that other homes in his same residential development were experiencing defective stucco issues.[20] In fact, one of his neighbors in the Red Lion Chase Development "noticed the visual evidence of stucco failure on [Plaintiff's] home and informed [Plaintiff] that many, many houses in the neighborhood [were] experiencing the same problems."[21] Some neighbors

---

[17] Settlement Agreement ¶ 5.
[18] Compl. ¶ 41.
[19] *Id.*
[20] *Id.* ¶ 44.
[21] *Id.* ¶ 43.

6

produced the Red Lion Chase Water Infiltration Flyer ("Flyer"), which suggested that homeowners experiencing stucco issues should submit warranty claims to Toll Brothers.[22]

On May 2, 2018, Plaintiff submitted a warranty claim to Toll Brothers.[23] The Warranty Claim form, completed and signed by Plaintiff, identifies the following stucco and structural damages: (1) water damage around the windows; (2) water damage to the chimney; (3) wood rot around the doors; and (4) water damage to the concrete front of the residence.[24] On June 27, 2018, Toll Brothers rejected Plaintiff's claim, informing him that (a) all builder warranties had expired, and (b) on April 6, 2016, Sturtz and Wolff executed Settlement Agreement releasing the Developer Defendants from further liability under the Builder's Limited Warranty.[25] The Settlement Agreement specifically addressed the stucco and construction defects identified in the February 29, 2016 Expert Home Group Inspection Report and the March 3, 2016 Reaction Exteriors repair estimate.[26]

---

[22] *Id.* ¶ 45; s*ee also id*. Ex. 6 (Trans. ID. 66715267).
[23] Compl. ¶ 47; *see also id*. Ex. 7. to Compl. (Trans. ID. 66715267).
[24] *Id.*
[25] *Id*. Ex. 8. (Trans. ID. 66715267). Per the Settlement Agreement, Sturtz and Wolff completed settlement on the purchase of the residence on March 17, 2006, and that the Builder's Limited Warranty was for a term of ten years, expiring on March 17, 2016. Prior to settlement, Sturtz and Wolff submitted a Builder's Limited Warranty claim to Toll Brothers, which included the 2016 Report prepared by Expert Home Group, and the Reaction Exteriors March 3, 2016 repair estimate, "seeking repairs to the Home due to alleged deficiencies causing water infiltration in the Home…." *Id*. Ex. 9. On April 6, 2016, Sturtz and Wolff executed the Settlement Agreement with Toll Brothers. *Id*.
[26] Compl. ¶ 53; s*ee also* Settlement Agreement.

In March of 2019, after Toll Brothers rejected Plaintiff's warranty claim, Plaintiff commissioned a second stucco inspection, a Confidential Property Inspection Report (the "2019 Report").[27] Plaintiff obtained the 2019 Report and forwarded it to Reaction Exteriors for an estimated cost of repairs. This time, the Reaction Exteriors estimate valued the cost of repairs at $165,890.00 for stucco and brick veneer replacement, stucco and structural repairs to the chimney, and comprehensive caulking repairs.[28]

On June 24, 2021, Plaintiff filed the Complaint against Defendants, asserting claims for declaratory judgment, negligent construction, breach of contract, breach of implied covenant of good faith and fair dealing, tortuous interference with contract, and fraud.[29]

### III.   STANDARD OF REVIEW

When considering a motion to dismiss, the Court "will consider all well-pleaded facts in the complaint and accept them as true."[30] The Court will grant a Rule 12(b)(6) motion to dismiss only when "it appears 'with reasonable certainty that, under any set of facts that could be proven to support the claims asserted, the

---

[27] *Id*. Ex. 12 (Trans. ID. 66715267).
[28] *Id*. Ex. 13 (Trans. ID. 66715267).
[29] *See generally* Compl.
[30] *Reid v. Thompson Homes at Centerville, Inc*., 2007 WL 4248478, at *4 (Del. Super. Ct. Nov. 21, 2007) (*quoting AT&T Corp. v. Clarendon America Ins*., 2006 WL 2685081, at *3 (Del. Super. Ct. Sept. 18, 2006)).

plaintiff would not be entitled to relief.'"[31] The moving party bears the burden of establishing the aforementioned condition and the Court "must view all inferences drawn from the facts plead in the light most favorable to the plaintiff."[32] In deciding the motion, the Court can also consider documents incorporated into the complaint which are integral to the plaintiff's claim.[33]

## IV. PLAINTIFF'S CLAIMS

Plaintiff's Complaint asserts seven claims. Count I of Plaintiff's Complaint is a claim for declaratory judgment. Plaintiff argues that the April 6, 2016 Settlement Agreement between Sturtz, Wolff and Toll Brothers is invalid because it identifies Wolff as an "Owner" of the residence.[34] Plaintiff claims that because Wolff was not an owner of the property, he lacked the authority to release Toll Brothers from future warranty claims.[35]

In Count II, Plaintiff argues that the Settlement Agreement is a "contract prohibited by law" and is unenforceable.[36] Plaintiff argues the Settlement Agreement "contractually prohibited" Sturtz from compliance with 6 *Del. C.* §

---

[31] Super. Ct. Civ. R. 12(b)(6); *Thomas v. Capano Homes Inc*., 2015 WL 1593618, at *2 (Del. Super. Ct. Apr. 2, 2015) (*citing Clinton v. Enterprise Rent-A-Car Co.*, 977 A.2d 892, 895 (Del. 2009)).

[32] *Jeanbaptiste v. Clarios*, LLC, 2020 WL 2375047, at *1 (Del. Super. Ct. May 11, 2020); *Thomas*, 2015 WL 1593618, at *2 (*citing Savor, Inc. v. FMR Corp.,* 2001 WL 541484, at *2 (Del. Super. Ct. Apr. 24, 2001)).

[33] *Reid*, 2007 WL 4248478, at *4.

[34] Compl. ¶ 78.

[35] *Id*. ¶ 79.

[36] *Id*. ¶ 82.

2572(a), which requires a seller in a real property transaction "disclose, in writing, to the buyer... all material defects of that property that are known at the time the property is offered for sale or that are known prior to the time of final settlement."[37] Plaintiff claims that the Settlement Agreement allowed Sturtz and Wolff "to conceal the existence of the agreement and its terms, which included the misappropriation of [Plaintiff's] warranty claim, the severity of the underlying, systemic stucco issue known by Defendants, as well as the release of then present and future water infiltration warranty claims...."[38]

Count III is a claim for negligent construction. Plaintiff asserts than Developer Defendants breached their duty of care in constructing the home.[39] Specifically, Plaintiff claims that Developer Defendants owed a duty to the homeowners to construct the home and install the stucco in a reasonable manner,

---

[37] *Id*. Plaintiff's claim that Sturtz was prohibited from disclosing the settlement is contrary to the language in the Settlement Agreement. The Settlement Agreement required Sturtz and Wolff to make specific disclosures regarding the settlement and release of Toll Entities and the Limited Warranty, among other necessary disclosures. *See supra* n. 17., at 6. The Complaint and the attached exhibits establish Plaintiff was aware of the content and conclusions in the 2016 Report, *as he commissioned it and provided it to Sturtz.* All identified and potentially future defects were identified in the 2016 Report. And, because Sturtz's warranty claim was based on the 2016 Report commissioned by Plaintiff, and submitted to Toll Brothers prior to settlement, the Complaint inferentially concedes Plaintiff's "knowledge of the severity of the underlying systemic stucco issue(s)" and the factual basis alerting Plaintiff to "present and future water infiltration" issues. Compl. ¶ 84.

[38] *Id*. ¶ 84.

[39] *Id*. ¶ 89.

and they failed to do so "by engaging in faulty stucco construction and improper installation."[40]

Count IV alleges a breach of contract claim against Sturtz. Plaintiff argues that he and Sturtz entered into a valid enforceable contract, which included the content of the seller's disclosures. Plaintiff points to seller's duties under 6 *Del. C.* § 2572(a), arguing that Sturtz was "obligated to disclose" any faulty issues pertaining to the functionality of the stucco, and she failed to do so.

Count V is a claim for a breach of the implied covenant of good faith and fair dealing. Plaintiff argues Sturtz failed to disclose the "faulty construction, improper installation and systemic stucco issues at the property,"[41] and it was unreasonable to conceal them from Plaintiff. Plaintiff also claims Sturtz was "impliedly obligated" to disclose the existence of a homeowner's warranty.[42]

Count VI of Plaintiff's Complaint is a claim for tortious interference with contract against Developer Defendants and Wolff. Plaintiff claims that upon entering into the Settlement Agreement, the Developer Defendants and Wolff agreed to terms which "contractually obligated [ ] Sturtz to violate her obligations of

---

[40] *Id.* ¶ 91.
[41] *Id.* ¶ 102. The same reasoning in n.37 applies here. Plaintiff suggests Sturtz had, and failed to disclose, the "faulty construction, improper installation and systemic stucco issues at the Property," but the sole source of the faulty construction, improper installation and systemic stucco issues Sturtz is alleged to have "concealed" from Plaintiff are the specific defects identified in Plaintiff's 2016 Report.
[42] *Id.* ¶ 103.

disclosure" to Plaintiff.[43]   Plaintiff alleges the Settlement Agreement prohibited Sturtz from disclosing the alleged issues with the stucco and the existence of the homeowner's warranty before, during and after the Settlement Agreement was signed.[44]

Finally, Count VII is a fraud claim.  Plaintiff argues all Defendants entered into the Settlement Agreement after Plaintiff and Sturtz entered into the Agreement of Sale, but before the time of the closing of the Property.[45]   Plaintiff claim relies upon the Agreement of Sale, where Sturtz "represented that there was no 'Homeowner's Warranty' in existence."[46]  Without more, Plaintiff avers that "Sturtz made that representation in coordination with, or at the direction of," the remaining Defendants.[47]   Plaintiff then claims that "all Defendants either knew that representation was false or made that representation with reckless indifference to the truth."[48]  Furthermore, the Complaint notes when "Sturtz bought the property from Developer Defendants (March 17, 2006), Developer Defendants issued a Builder's Limited Warranty to the homeowners."[49]  Plaintiff claims all Defendants entered

---

[43] *Id.* ¶ 109.
[44] *Id.* ¶ 111.
[45] *Id.* ¶ 116.
[46] *Id.* ¶ 117.
[47] *Id.*
[48] *Id.* ¶ 118.
[49] *Id.* ¶ 119.

into the Settlement Agreement with the intention of misrepresenting the condition of the property, and that he suffered injury in reliance of that misrepresentation.

## V. PARTIES' CONTENTIONS

On September 10, 2021, Sturtz and Wolff filed a Motion to Dismiss the Complaint, arguing that the statute of limitations had expired. Defendants Sturtz and Wolff assert that the 2016 Report, commissioned by Plaintiff, identified specific defects in the stucco and expressly warned of the real possibility of more extensive defects and damage not revealed by the stucco inspection.[50] Thus, as of April 6, 2016 - the settlement date - Plaintiff was in possession of information sufficient "to put a person of ordinary intelligence and prudence on inquiry which, if pursued, would lead to the discovery of such facts."[51] Accordingly, Sturtz and Wolff first assert the statute of limitations began, at the latest, on the settlement date, April 6, 2016, terminating more than three years before Plaintiff filed the Complaint.[52] Second, Sturtz and Wolff direct the Court to the May 2, 2018 warranty claim Plaintiff submitted to Toll Brothers, wherein he asserted warranty claims for defective stucco, water infiltration and structural issues. The May 2, 2018 warranty

---

[50] *Id.* ¶ 12.
[51] *Id.* ¶ 13.
[52] *Id.* ¶¶ 83-86; s*ee also* DEL. CODE ANN. tit. 6 § 2572(a) (2021).

13

claim demonstrates Plaintiff was on inquiry notice of the injuries he now raises, well before the expiration of the statute of limitations.[53]

On September 22, 2021, Developer Defendants filed a Motion to Dismiss, arguing that all counts of the Complaint are time-barred.[54] The Developer Defendants argue the statute of limitations would toll no later than May 2, 2018, when Plaintiff submitted a warranty claim to Toll Brothers - more than three years prior to filing the Complaint.[55] As of that date, Plaintiff had inquiry notice of the claims he did not raise until filing a Complaint on June 24, 2021. As such, Plaintiff's claims are time-barred.

Plaintiff asserts Defendants' Motions to Dismiss are premature, claiming the pending motions should be denied and the Court should allow the parties to proceed with discovery.[56] Plaintiff alleges each of the defendants knew about, but withheld from Plaintiff, information regarding the stucco problems.[57] Plaintiff claims inquiry notice was not established until receipt of Toll Brothers' June 27, 2018 warranty rejection letter.[58] Accordingly, the discovery toll attached at receipt of the rejection

---

[53] Defendants Wendy Jo Sturtz and William F. Wolff's Motion to Dismiss Complaint as to Moving Defendants, ¶¶ 5-9 (Trans. ID 66921061).

[54] Motion to Dismiss Complaint as to Defendants Hockessin Chase L.P. and Toll Brothers, Inc., ¶ 11 (Trans. ID 66956324).

[55] *Id*. ¶¶ 12-14.

[56] Plaintiff's Combined Response in Opposition to Both Pending Motions to Dismiss ("Plaintiff's Response"), ¶ 1 (Trans. ID 67085027).

[57] *Id*. ¶ 2.

[58] *Id*. ¶ 9.

letter, and the Complaint, filed just within the three-year statute of limitations, was timely.

## VI.  DISCUSSION

The causes of action in Plaintiff's Complaint are governed by 10 *Del. C.* § 8106,[59] "which requires that a plaintiff bring an action to recover damages within three years of the 'accruing of the cause of action.'"[60]  The statute of limitations applicable to all of Plaintiff's claims is three years.  However, there are exceptions that toll the statute of limitations.  "To determine if an exception tolls the statute of limitations, the Court conducts a three part test:  first, the Court decides when a cause of action accrued; second, the Court must assess whether the statute of limitations has been tolled, and third, the Court must determine when the plaintiff was on

---

[59] 10 *Del. C.* § 8106 provides:

> [n]o action to recover damages for trespass, no action to regain possession of personal chattels, no action to recover damages for the detention of personal chattels, no action to recover a debt not evidenced by a record or by an instrument under seal, no action based on a detailed statement of the mutual demands in the nature of debit and credit between parties arising out of contractual or fiduciary relations, no action based on a promise, no action based on a statute, and no action to recover damages caused by an injury unaccompanied with force or resulting indirectly from the act of the defendant shall be brought after the expiration of 3 years from the accruing of the cause of such action; subject, however, to the provisions of §§ 8108–8110, 8119 and 8127 of this title.

[60] *Thomas*, 2015 WL 1593618, at *2 (*citing S & R Associated, L.P. v. Shell Oil Co.*, 725 A.2d 431, 439 (Del. Super. Ct. Sept. 30, 1998); 10 *Del. C.* § 8106); *Silverstein v. Fischer*, 2016 WL 3020858, at *4 (Del. Super. Ct. May 18, 2016) (holding the statute of limitations for claims of breach of contract, negligence and fraud is three years.).

inquiry notice of the cause of action."[61]   The party asserting the application of a tolling doctrine "bears the burden of pleading specific facts to demonstrate that the statute of limitations is, in fact, tolled."[62]

## A.    The Causes of Action Accrued on or Before June 4, 2016

The statute of limitations runs when a plaintiff's claim accrues.[63]  This occurs "'at the moment of the wrongful act and not when the effects of the act are felt,' even if the plaintiff is ignorant of the cause of action."[64]   A "wrongful act" is a general concept which varies depending upon the nature of the claims at issue.[65]  A cause of action for negligence accrues at the time of the alleged injury.[66]  A cause of action for fraud accrues when the fraud is successfully penetrated.[67]  A cause of action for breach of contract accrues when the breach occurs.[68]

Viewing the evidence in the light most favorable to the Plaintiff, the Court concludes the latest date that the alleged wrongful act could have accrued for each of Plaintiff's claims is April 6, 2016 – the date of settlement on the purchase of

---

[61] *Silverstein*, 2016 WL 3020858, at *4 (citing *Wal-Mart Stores, Inc. v. AIG Life Ins. Co.*, 860 A.2d 312, 319 (Del. 2004)).
[62] *Reid*, 2007 WL 4248478, at *8.
[63] *Id.*
[64] *Id.* (internal citations omitted).
[65] *Id.* (*citing Nardo v. Guido DeAscanis & Sons, Inc.*, 254 A.2d 254, 256 (Del. Super. Ct. May 26, 1969)).
[66] *Id.* (*citing Nardo*, 254 A.2d at 256).
[67] *Id.* (*citing Van Lake v. Sorin CRM USA, Inc.*, 2013 WL 1087583, at *6 (Del. Super. Ct. Feb. 15, 2013)); *Puig v. Seminole Night Club LLC*, 2011 WL 3275948, at *4 (Del. Ch. Jul. 29, 2011).
[68] *Id.* (*citing Nardo*, 254 A.2d at 256).

Plaintiff's home. Therefore, to be timely, Plaintiff would have had to file a Complaint on or before April 6, 2019, three years from the date of the alleged wrongful act. Because Plaintiff filed the Complaint on June 24, 2021, more than five years after the wrongful act, Plaintiff's claims are time-barred unless he pleads specific facts to demonstrate a tolling doctrine applies and he was not on inquiry notice of the claims.

## B. The Application of Tolling Doctrines

Plaintiff alleges two tolling doctrines may apply – the Discovery Rule and the Fraudulent Concealment doctrine. In considering these doctrines, the Court is considering the evidence in the light most favorable to the movant, taking all well-pled facts in the Complaint as true.

### 1. The Discovery Rule

Under the Discovery Rule, the statute of limitations is tolled where "there must have been no observable or objective factors to put a party on notice of an injury, and plaintiff's must show that they were blamelessly ignorant of the act or omission and the injury."[69] Tolling of the statute of limitations is also recognized where the injury is inherently unknowable and the claimant is blamelessly ignorant of the wrongful act and the injury complained of."[70] A Plaintiff is considered to

---

[69] *Crest Condo. Ass'n v. Royal Plus, Inc.,* 2017 WL 6205779, at *3 (Del. Super. Ct. Dec. 7, 2017) (*citing In Re Dean Witter*, 1998 WL 442456, at *5 (Del. Ch. Jul. 17, 1998)).
[70] *Silverstein*, 2016 WL 3020858, at *5, (*citing Wal-Mart Stores, Inc.,* 860, A.2d at 319).

possess inquiry notice "when they have discovered facts that would form the basis of the action or are aware of facts that would put an ordinary person on inquiry and if those facts were pursued, it would lead the plaintiff to discover the cause of action.[71] Inquiry notice does not require a plaintiff to have actual knowledge of an injury, but rather requires plaintiff have "an objective awareness of the facts giving rise to the injury."[72] To evaluate a plaintiff's "objective awareness" of the facts giving rise to the injury, the Court examines whether there are "red flags" that "clearly and unmistakably would have led a prudent person of ordinary intelligence to inquire further and by determining if plaintiff gained 'possession of facts sufficient to make him suspicious, or that ought to make him suspicious.'"[73]

Construing the evidence in the light most favorable to Plaintiff, the Court finds Plaintiff has failed to plead sufficient facts to demonstrate the Discovery Rule tolled the statute of limitations. In 2016, when Plaintiff purchased the Property, he paid for and received both a home inspection report and the 2016 Report. The home inspection report warned Plaintiff, "[s]tucco exterior walls have had a history of leakage and hidden damage. This should be further investigated. A qualified,

---

[71] *Id.* at *6.
[72] *Id.*
[73] *Id.* (*citing Coleman v. Pricewaterhousecoopers LLC*, 854 A.2d 838, 842 (Del. 2004) (*quoting Sunrise Ventures, LLC v. Rehoboth Canal Ventures, LLC*, 2010 WL 363845, at *7 (Del. Super. Ct. Jan. 27, 2010).

licensed stucco inspector/contractor should be consulted for a full evaluation of the exterior walls and estimates prior to the end of the inspection contingency period."[74]

The 2016 Report identified the following stucco and related construction defects: the stucco was installed at an insufficient thickness; the home evidenced improper caulking around windows, doors and related exterior items; and the stucco was not installed with expansion joints. The stucco was also cracked, leading to a recommendation to seal all of the stucco to prevent further water infiltration and potential structural damage. The 2016 Report also specifically identified areas in the stucco that exhibited higher than acceptable moisture levels,[75] missing deck ledger flashing,[76] damage to the substrate on the right rear corner of the family room,[77] and numerous caulking issues that impacted the integrity of the stucco.[78] The report also identified water damage to exterior doorframes.[79] Additionally, the report was qualified, informing Plaintiff:

> IMPORTANT: It is important to note that all observations and moisture readings represent the conditions present at the specific time of inspection, and may or may not, be indicative of all conditions that may be present at any given time, or even typical conditions that may not be

---

[74] Compl. ¶ 35.

[75] *Id.* Ex. 3 ¶¶12-14 (*noting* borderline elevated moisture readings (10) and elevated moisture readings (5)).

[76] *Id.* ¶ 4; s*ee also id*. Ex. 3, at 20.

[77] *Id.* ¶ 13.

[78] *Id.* ¶¶ 6-9.

[79] *Id*. at 13; *See also id*. Ex. 3, at 18 (photo 17.3, photo 18.4) (*showing* rot at kitchen deck door left side trim), photo 18.6 (*showing* rotted jamb at laundry room deck door).

present at the time of inspection. They should be used as clues to assess what MAY be happening within the structure.[80]

The 2016 Report reasonably informed Plaintiff that its conclusions were qualified and did not identify all potential defects.

The contents of the 2016 Report raise numerous red flags that clearly and unmistakably would have led a reasonable person of ordinary intelligence to inquire further. Plaintiff was in possession of facts that informed him the stucco on the residence was improperly installed and posed a risk of deterioration, failure and further structural damage to the home. Upon receipt of the 2016 Report prior to settlement on April 6, 2016, Plaintiff was on inquiry notice, if not actual notice, of the defects and injury.

Plaintiff's suggestion that "the significance of the stucco issues was inherently unknowable," because he had an "invasive" home inspection performed, which "triggered a *de minimis* invoice . . . for stucco repairs,"[81] disregards the content of the 2016 Report. At best, Plaintiff tacitly acknowledges the existence of injury at the time of the 2016 Report, but suggests he just was not aware of the severity of the damage. But the 2016 Report warned him of just that – that the inspection was not perfect and may not disclose present but undetected stucco defects. The injury at

---

[80] *Id*. at 4.
[81] Plaintiff's Response ¶ 6.

issue was not "inherently unknowable," and Plaintiff cannot claim to be "blamelessly ignorant of the wrongful act and the injury complained of."

Defendants also argue, alternatively, that Plaintiff had inquiry notice of the injury as of May 2, 2018, the date he submitted a warranty claim to Toll Brothers. Inquiry notice as of May 2, 2018 still puts Plaintiff beyond the expiration of the statute of limitations. Taking all of the previously identified evidence from the 2016 Report, Plaintiff was also aware, prior to May 2, 2018, that other homes in the same residential development were experiencing defective stucco issues, and one of his neighbors told Plaintiff his home was exhibiting stucco failure. Plaintiff received and reviewed a flyer suggesting that owners experiencing stucco issues submit warranty claims to Toll Brothers, and on May 2, 2018, Plaintiff submitted a warranty claim that identified specific stucco, water infiltration, and structural damage. As of that date, Plaintiff *knew* both the wrongful act and the injury to his residence. This information as of May 2, 2018 did, in fact, lead Plaintiff to "inquire further" by *actually submitting a warranty claim* – inquiring further about the stucco damage to the home and asking Toll Brothers to fix it.[82]

###### 2. Fraudulent Concealment

---

[82] Plaintiff's claim that he was subject to inquiry notice upon receipt of as June 27, 2018, the date Toll Brothers sent Plaintiff a letter, rejecting the warranty claim. The June 27, 2018 letter neither suggested nor informed Plaintiff that Toll Brothers admitted the Property suffered from any construction defect at the time Plaintiff submitted the warranty claim.

Plaintiff next contends that the Fraudulent Concealment exception may toll the statute of limitations. "If a defendant fraudulently conceals information which would have put the plaintiff on notice of the truth or intentionally throws the plaintiff "off the trail of inquiry," the statute of limitations is tolled.[83]  However, "[m]ere ignorance of the facts without the concealment or misrepresentation does not toll the statute of limitations."[84]  When it is clear from the face of the Complaint that a cause of action accrued more than three years before the complaint was filed, a plaintiff must plead facts sufficient to toll the statute of limitations.  A plaintiff asserting fraudulent concealment as a tolling doctrine must plead the fraudulent concealment with particularity.[85]

The Fraudulent Concealment exception tolls the statute of limitations when there "was an affirmative act of concealment or some misrepresentation that was intended to put a plaintiff off the trail of inquiry."[86]  First, as a general matter, the injury at issue in this litigation was identified only after Plaintiff commissioned, received and shared the 2016 Report with Sturtz prior to settlement. On March 12, 2016, Sturtz provided a copy of the 2016 Report to the Developer Defendants when

---

[83] *Crest Condo. Ass'n v. Royal Plus, Inc.*, 2017 WL 6205779, at *3 (Del. Super. Ct. Dec. 7, 2017).
[84] *Continental Finance Co., LLC v. ICS Corp.*, 2020 WL 836608, at *4 (Del. Super. Ct. Feb. 20, 2020).
[85] *Id.* (*citing* Super. Ct. Civ. R. 9(b); *Krishna v. Asura Dev.Grp. Inc.*, 2017WL 1103013, at *6 (Del. Super. Ct. Mar. 24, 2017)).
[86] *Id.* (*citing Winner Acceptance Corp. v, Return on Capital Corp.*, 2008 WL 5352063, at *15 (Del. Ch. Dec. 23. 2008) (*citing In Re Dean Witter P'Ship Litig.*, 1998 WL 442456, at *5 (Del. Ch. Jul. 17, 1998)).

she submitted the Builder's Limited Warranty claim. Plaintiff's fraudulent concealment claim makes no sense. Defendants collectively received the 2016 Report *from Plaintiff*. It was the 2016 Report that notified the Plaintiff and all Defendants of potentially defective stucco issues, and there are no facts in the Complaint which suggest Defendants possessed knowledge of any defective stucco or water infiltration issues prior to the receiving the 2016 Report.

Second, Plaintiff claims Defendants committed common law fraud by denying the existence of a Homeowner's Warranty in the Agreement of Sale.[87] By doing so, "all Defendants either knew that representation was false or made that representation with reckless indifference to the truth."[88] Plaintiff asserts the Defendants engaged in fraudulent conduct, because when "Sturtz brought the property from Developer Defendants (March 17, 2006), Developer Defendants issued a Builder's Limited Warranty to [Sturtz]." As a result of this "fraud," Plaintiff was "induced to proceed with closing without his knowing of the existence of the warranty on the property. . .."

Plaintiff's burden is to identify particularized facts sufficient to establish the applicability of a tolling bar – in this case, fraudulent concealment.[89] Plaintiff has failed to do so. Failure of Sturtz to acknowledge the existence of a "Homeowner's

---

[87] Compl. ¶ 117.
[88] *Id*. ¶ 118.
[89] *See* Super. Ct. Civ. R. 9(b).

Warranty" on the Agreement of Sale because of the existence of a "Builder's Limited Warranty" does not constitute fraudulent concealment. And, the Agreement and Release, which Plaintiff attached as Exhibit 9 to the Complaint (and incorporated by reference in the Complaint), expressly provides that the Builder's Limited Warranty expired weeks prior to settlement (March 17, 2016). Plaintiff, who was not owner of the property at any time the Builder's Limited Warranty was in effect, would not have had a right to file a warranty claim. Settlement occurred on April 6, 2016, weeks after the Builder's Limited Warranty expired. Furthermore, Sturtz gave Plaintiff a credit for the known cost of repairs, *per Plaintiff's stucco inspection report and repair estimate*, at settlement. Plaintiff has not alleged an affirmative act of concealment or some misrepresentation that was intended to put him off the trail of inquiry sufficient to trigger a bar to the running of the statute of limitations. The trail of inquiry started with Plaintiff's 2016 Report.

## VII. CONCLUSION

Viewing the record in the light most favorable to Plaintiff, the Court finds that all of Plaintiffs' claims are time-barred. Accordingly, Defendants' Motions to Dismiss are **GRANTED**.

**IT IS SO ORDERED**.

/s/ Jan R. Jurden

Jan R. Jurden, President Judge

cc: Prothonotary